AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Brandon Lamar James | ) Case No. 13-2624 SKG |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ November 4, 2013 _____ in the county of _____ Baltimore _____ in the

_____ District of _____ Maryland _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession with Intent to Distribute more than 500 Grams of Cocaine |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Joel Bolden, DEA
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: 11/5/13

_____
Judge's signature

City and state: Baltimore MD

Hon. Susan K. Gauvey
_____
Printed name and title

13-2624 SKG

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Joel J. Bolden, being duly sworn, depose and say that:

1. Your Affiant, Special Agent Joel J. Bolden, is a Special Agent with the United States

Drug Enforcement Administration (DEA) and is an investigative or law enforcement officer

within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered to

conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. Section 2516.

Your Affiant has been employed by the DEA since July 2002. Your Affiant is currently

assigned to Washington Division Office, Baltimore District Office, High Intensity Drug

Trafficking Area (HIDTA) Enforcement Group-54, Major Drug Traffickers Initiative (MDTI).

Prior to assignment in the Washington-Baltimore area your affiant was assigned and worked in

the Los Angeles Field Division of DEA and was assigned to a HIDTA Enforcement Group which

worked with the Los Angeles County Sheriff's Office (LASO). Your affiant during the course of

his career has received training in drug identification, drug enforcement laws, undercover

operations, surveillance techniques, informant handling, interviewing, report writing and tactical

training.

In the time your affiant has been a Special Agent with the DEA, your affiant has

participated and been the case or co-case agent in multiple narcotics related investigations

involving the manufacture, possession, and distribution of controlled substances. Your affiant

has been involved in the writing, planning and execution of numerous search warrants and

worked in an undercover capacity. Your affiant has also written wiretap affidavits and been

involved with multiple wiretap investigations.  During the course of your affiants investigations, you affiant will often confer with other experienced federal and local narcotics investigations with similar experiences.

As a result of my training and experience, your affiant has become familiar with the methods employed by narcotics traffickers, to smuggle, safeguard and distribute narcotics and to collect and launder narcotics-related proceeds.  These methods include the use of debit calling cards; the use of multiple telephone or successive telephones: public telephones; wireless communications technology such as cellular telephones; counter-surveillance; smuggling; use of traps and hidden compartments; multiple residences or stash locations; money laundering schemes tied to legitimate businesses; false or fictitious identities; and the use of coded or vague communications in an attempt to avoid detection by law enforcement and circumvent narcotics investigations.

2.  During the month of August 2013, your affiant along with investigators from HIDTA Group 54 and Baltimore County Police Department East-Side Narcotics Unit met with two confidential informants (CI1 and CI2 hereinafter), who are admitted Controlled Dangerous Substance (CDS) traffickers. CI1 and CI2 are familiar with the various methods CDS traffickers use to distribute CDS as well as the street language used to facilitate their operations. CI1 and CI2 have been proven credible based on intelligence received during their debriefings with regard to other CDS traffickers which has been corroborated.  CI1 and CI2 advised they knew of an individual named "Brandon" (later identified as Brandon JAMES) a black male who sells and distributes half ounce quantities of crack cocaine and powder cocaine at a cost of $700.00 per half ounce for either.  CI1 and C12 provided a number for JAMES of (443) 726-8422. CI1

further stated JAMES lived in the Dundalk, Maryland area and he would conduct his sales of

crack cocaine and powder cocaine in the Dundalk area and occasionally within the city limits of

Baltimore.  Both CI1 and CI2 stated they believe JAMES would conduct his sales in an older

model silver Acura.  A Maryland ~~vehicle registration~~ License Plate of 9AA9286 was provided for the vehicle

driven by JAMES.

3.  In August 2013, your affiant along with other investigators from HIDTA Group 54 and

Baltimore County East-Side Narcotics met with CI1. CI1 was directed to contact JAMES via

cellular phone and arrange for JAMES to meet with CI1 for the sale and delivery of a pre-

arranged amount of crack cocaine. JAMES directed CI1 to meet him at a pre-determined location

in Baltimore County, Maryland. Investigators conducted a search of CI1 and the CI vehicle and

found no contraband on CI1. CI1 was issued a pre-determined amount of U.S. Currency taken

from the DEA'S Investigative fund.  Surveillance was established at the meet location prior to

the arrival of JAMES.  During the surveillance your affiant and Baltimore County Police

Detective Ernest Moore observed JAMES operating a silver Acura with Maryland License

9AA9286 (Registered Owner: Jacqueline Renee Hebron 7521 Holabird Avenue, Dundalk,

Maryland, 21222).  The silver Acura was observed by surveillance arriving at the pre-determined

location and parking next to the CI vehicle.  CI1 exited from the CI vehicle and entered JAMES'

vehicle on the passenger-side.  CI1 was then observed by surveillance exiting from JAMES'

vehicle and re-entering the CI vehicle.  Your affiant and Detective Moore met with CI1 who gave

us two clear knotted bags containing a white rock like substance, which we later determined was

crack cocaine.  CI1 and the CI vehicle were searched again with negative results for further

contraband. Surveillance further observed JAMES depart from the pre-determined location and

drive to the Holabird East Apartments in the vicinity of 1700 Holaview Road, Dundalk,

Maryland. Surveillance members were unable to identify the specific apartment entered by

JAMES at that time. Your affiant and investigators involved with the investigation of JAMES

know through their training, knowledge and experience narcotics traffickers will often own and

utilize vehicles which are listed in an individual's name other than their own, in an effort to

thwart a law enforcement investigation.

    4.    Later in August 2013, your affiant along with other investigators from Baltimore

County East-Side Narcotics Unit again met with and directed CI1 to contact JAMES and arrange

for JAMES to meet with CI1 for the sale and delivery of a pre-arranged amount of crack cocaine.

JAMES directed CI1 to meet at a pre-determined location in Baltimore County, Maryland. Prior

to CI1 meeting with JAMES investigators conducted a search of CI1 with negative results for

contraband. CI1 was issued a pre-determined amount of U.S. Currency taken from the DEA'S

Investigative fund. Surveillance was established at the pre-determined location prior to the arrival

of JAMES. During the course of surveillance your affiant and Detective Moore observed a black

Cadillac STS with Maryland License A227505 (Registered Owner: Jacqueline Renee Hebron,

7521 Holabird Ave, Dundalk, Maryland) JAMES was observed to be the operator of the vehicle.

Your affiant along with Detective Moore and Task Force Officer (TFO) Steve Rose followed the

black Cadillac STS to 7521 Holabird Avenue, Dundalk, Maryland 21222. JAMES was observed

by TFO Rose parking the vehicle behind 7521 Holabird, exiting from the vehicle and entering

through the back door of the residence. After JAMES entered the residence your affiant and

Detective Moore were informed by CI1, JAMES had just contacted him/her and advised he was

on the way. JAMES was then observed by TFO Rose exiting from 7521 Holabird Avenue,

Dundalk, Maryland and entering the black Cadillac. JAMES was followed to the pre-determined meet location by TFO William Bearde. Upon arrival, JAMES stopped and parked next to the CI's vehicle. CI1 exited the CI vehicle and entered JAMES' vehicle on the passenger-side as observed by TFO Ryan Jones. CI1 met with JAMES and quickly exited the vehicle and returned to his/her vehicle.

After the transaction, your affiant and Detective Moore met with CI1 and retrieved two clear knotted bags which contained crack cocaine. CI1 and the CI vehicle were searched again with negative results for contraband. Surveillance of JAMES was continued and concluded when JAMES returned to and parked in the rear of 7521 Holabird Avenue, Dundalk, Maryland. Your affiant and investigators involved with this investigation believe JAMES utilizes 7521 Holabird Avenue address for the purpose of storing and packaging the crack cocaine which was delivered to CI1.

Your Affiant SA Bolden conducted a Law Enforcement Data Base Check of 7521 Holabird Ave, Dundalk, Maryland. The aforementioned address was the subject of a 2008 Narcotics investigation by the City of Baltimore Police Department and DEA in which, Raymond Gilbert BROADWAY was arrested and had utilized the residence; BROADWAY was arrested for possession of cocaine which was seized from the residence along with packaging material, sifters and scales; present at the time the residence was searched were Jacqueline Renee HEBRON and Brandon Lamare JAMES.

5. In October 2013, your affiant along with investigators from HIDTA 54 again met with and directed CI1 to contact JAMES for the sale and delivery of a pre-arranged amount of powder cocaine. Upon being contacted, JAMES directed CI1 to meet at a pre-determined location in

Baltimore County, Maryland. Prior to CI1 meeting with JAMES investigators conducted a search of CI1 and the CI's vehicle with negative results for contraband. CI1 was issued a pre-determined amount of U.S. Currency taken from the DEA'S Investigative fund. Surveillance was established at the pre-determined meet location prior to the arrival of JAMES. After surveillance was established your affiant SA Bolden was contacted by CI1 who informed SA Bolden JAMES had contacted CI1 and told CI1 he was on the way. A few minutes later, TFO Jones observed CI1 exit from the CI vehicle and walk towards a silver Acura and enter the passenger-side of the vehicle. The silver Acura had Maryland license 9AA9286 and was used by JAMES in the first controlled purchase of narcotics. CI1 exited the vehicle quickly and returned to the CI vehicle. JAMES was then observed by TFO Jones to be operating the Acura and departing from the location. SA Bolden along with TFO Randall Carrington met with CI1 and retrieved a clear knotted bag containing powder cocaine. A search of CI1 and the CI vehicle was conducted with negative results for contraband. Surveillance of JAMES continued as JAMES drove to the Park East Apartments, located at 2024 Flintshire Road, Rosedale, Maryland. JAMES stayed in his vehicle after arriving and did not exit. A few minutes later, investigators observed a white 2012 KIA Forte with Maryland License 8AY0205 arrive and park near JAMES' vehicle. TFO Carrington observed an unidentified black male, dressed in black, exit from the KIA and enter the passenger-side of JAMES' vehicle. The unidentified black male then exited from the vehicle a short time later and departed in the 2012 white KIA. JAMES still continued to stay in his vehicle.

Based upon the observations of surveillance with the unidentified black male arriving and entering into the passenger-side of JAMES' vehicle and immediately departing, investigators

believed this behavior to be consistent with JAMES conducting a narcotics transaction; a traffic stop of the white 2012 KIA was conducted. Although, no contraband was recovered your affiant and investigators believe the contraband could have been secreted into the vehicle or onto the individual in question. Investigators also know that the meet between JAMES and the operator of the KIA could have been a "money drop", where the operator of the KIA was paying JAMES money owed for narcotics that were supplied up front with the expectation that JAMES would be reimbursed after the narcotics were sold.

JAMES eventually exited from his vehicle as observed by SA Robert Grob and walked into apartment building 2024 with dry cleaning in his hand; and proceeded up the stairs to the second level of the building. SA Grob was unable to ascertain which apartment JAMES entered at that time.

Also during the month of October 2013, your affiant conducted a check of 2024 Flintshire Road, Rosedale, Maryland and observed the silver Acura with Maryland license 9AA9286 (utilized by JAMES in two narcotics sales to CI1) and the black Cadillac STS with Maryland license A227505 (utilized by JAMES in one narcotic sale to CI1) parked in front of 2024 Flintshire Road, Rosedale, Maryland.

Your affiant SA Bolden further contacted the management company of the Park East Apartments to request leasing information regarding 2024 Flintshire Road, Rosedale, Maryland. Your affiant received documentation which indicated JAMES resides in 2024 Flintshire Road, Apartment 301, Rosedale, Maryland; the leasing documentation lists a Brandon Lamare James *Karen Terry, Tina Terry, and* with a DOB of 7/11/13 as an occupant of Apartment 301. Additionally, the silver Acura with Maryland License 9AA9286 is listed as a vehicle associated to Apartment 301 in the lease

agreement.

6. On October 28, 2013 your affiant along with Baltimore County Police Department Detective Ernest Moore submitted an affidavit in the Circuit/District for Baltimore County in support of search warrants for 2024 Flintshire Road, Apartment 301, Rosedale, Maryland, 21237 (Location A) and 7521 Holabird Avenue, Dundalk, Maryland 21222 (Location B). Additionally the warrants requested the search of the silver Acura with Maryland Vehicle Registration 9AA9286 and the black Cadillac STS with Maryland Registration A2275705. The search warrants for Location A and Location B and the vehicles were approved by the Honorable Judge Marsha L. Russell, Baltimore County, Maryland.

7. On November 4, 2013, pursuant to the approved search warrant HIDTA 54 along with Baltimore County Police Department East-Side Narcotics Unit served the warrants at Location A and Location B respectively.

8. During the service of warrant at Location A; Brandon Lamare JAMES was located and residing at Location A. In addition to JAMES residing at Location A were: Karen Terry (Girlfriend of JAMES and mother to JAMES'S son); Tina Terry (sister of Karen Terry); one female child age five and young male child approximately three months in age. Additionally the silver Acura and black Cadillac were parked directly in front of building 2024. Prior to searching the residence and asking any questions of the occupants TFO Randall Carrington advised all adult occupants of their rights by verbally issuing Miranda as witnessed by your affiant and other investigators who were present. Prior to searching the residence JAMES, as well as Karen Terry and Tina Terry were asked if there were any narcotics or weapons in the apartment or needles or instruments which could hurt investigators during the course of searching Location A. JAMES

informed TFO Carrington and your affiant there were narcotics in the residence as well as a .22 caliber hand-gun.  JAMES showed investigators where the handgun in the main bedroom closet was located.  Investigators also located cocaine which was packed in clear plastic bags in the main bedroom of the residence; instruments and material which indicated the packaging of powder cocaine and production of crack cocaine and the adding of a cutting agent to powder cocaine (i.e.:  scale with cocaine residue, a mixing beater with cocaine residue, a butter knife with cocaine residue, a mixing bowl with cocaine residue, a plate with cocaine residue, a duffel bag with cocaine residue and clear plastic sandwich bags).  Your affiant further retrieved approximately a quarter ounce of cocaine from the silver Acura in front of Location A.  Approximately 482.5 grams of cocaine and approximately seven grams of suspected crack cocaine were seized from Location A along with the .22 Caliber Hand-Gun and an undetermined amount of U.S Currency.  TFO Carrington interviewed and received statements from Karen Terry and Tina Terry in which both stated they were present during the execution of the search warrant of Location A.  Both stated they had no knowledge of or part in the handling of narcotics or narcotics proceeds in the residence.  TFO Carrington further received written Miranda Rights Waiver Forms from Karen Terry and Tina Terry as witnessed by TFO William Bearde.

9. JAMES was also interviewed.  Prior to, and during the search of Location A, JAMES informed your affiant and TFO Carrington that all narcotics and the hand-gun in the residence were his.  Your affiant along with TFO Carrington informed JAMES a search warrant was being executed at Location B as well.  Your affiant asked JAMES who Jacqueline Hebron was.  JAMES informed your affiant Jacqueline Hebron was his mother.  Your affiant asked JAMES if any narcotics, weapons or proceeds would be found at Location B.  JAMES told your affiant and

TFO Carrington if anything was found it would be downstairs and it would only be residue (referring to cocaine residue) and a scale.

9.   The execution of the search warrant at Location B was conducted by Baltimore County Police Department East-Side Narcotics Unit.  Present during the search of Location B were Baltimore County Police Detective Ernest Moore and DEA, HIDTA 54, SA Brian McElhenny.  Detective Moore and SA McElhenny informed your affiant they located and seized approximately 204.6 grams of powder cocaine and approximately 17 grams of suspected crack cocaine from the basement area of Location B.  At Location A, your affiant along with TFO Carrington asked JAMES if the narcotics found and seized at Location B belonged to his mother or if they were his.  JAMES informed your affiant and TFO Carrington the narcotics which were found and seized at Location B were his and did not belong to his mother.  Also seized from the basement area of Location B was a digital scale with cocaine residue.

10.   Upon concluding the warrant at Location A, JAMES was transported to DEA Baltimore District Office for processing.  A post arrest interview of JAMES was conducted by your affiant along with TFO Carrington and Detective Moore.  During the course of the interview JAMES admitted to your affiant, TFO Carrington and Detective Moore that he had been procuring powder cocaine for the past year; JAMES would usually acquire between 4.5 to 9 ounces at a time from his source of supply.  JAMES stated the cost of an ounce of powder cocaine from his source would usually cost him $1,060.00.  JAMES stated he had purchased cocaine no less than 15 times over the past year from his source.  Your affiant along with the aforementioned investigators asked JAMES why he was in possession of so much cocaine at one time.  JAMES informed investigators he had been "stacking", or building his supply of cocaine

and didn't want to be short since cocaine was in demand and short supply within the Baltimore Metropolitan area.  During the course of the interview your affiant and investigators asked JAMES if he would make "ready," a term referring to crack cocaine.  JAMES informed your affiant and investigators he had learned approximately one year ago how to make crack cocaine from powder cocaine for sale and distribution, and that it was really not hard to do.  Your affiant asked JAMES why he told investigators they should only expect to find a scale and some cocaine residue at Location B and more was actually seized and found at Location B.  JAMES told your affiant along with investigators he thought he had moved everything out of Location B (his mother's residence).


   WHEREFORE, I respectfully request the defendant Brandon Lamare JAMES be dealt with according to law.

Joel J. Bolden
Special Agent
Drug Enforcement Administration


Sworn to before me this
5   day of November, 2013.

UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MARYLAND